635 So.2d 1232 (1994)
PUROLATOR COURIER CORPORATION, et al.
v.
CITY OF NEW ORLEANS.
REPUBLIC OF FRANCE, etc.
v.
CONSOLIDATED FREIGHTWAYS CO., et al.
Joseph SMITH
v.
Rebecca S. BOYER, et al.
Nos. 93-CA-1068 to 93-CA-1070.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
Rehearings Denied May 12, 1994.
August J. La Nasa, Asst. City Atty., Marie A. Bookman, Deputy City Atty., Bruce E. Naccari, Acting First Asst. City Atty., Kathy L. Torregano, City Atty., New Orleans, for appellant, City of New Orleans.
Claude D. Vasser, C. David Vasser, Jr., Vasser & Vasser, New Orleans, for Purolator Courier Corp., Emery Worldwide, Rebecca S. Boyer and Old Republic Ins. Co.
*1233 Douglas M. Schmidt, Peter R. Borstell, Wayne E. Garrett, New Orleans, for appellee, Joseph Smith.
Moise W. Dennery, Thomas M. Benjamin, Michael R. Phillips, New Orleans, for appellee, Republic of France.
Before BARRY, BYRNES, CIACCIO, PLOTKIN and LANDRIEU, JJ.
BYRNES, Judge.
This case arises from an intersectional collision which occurred on September 13, 1990 at the intersection of Chestnut and General Taylor Streets in the City of New Orleans. The appellee, Rebecca Boyer, a driver for Purolator Courier, was traveling east on Chestnut Street. Joseph Smith, a chauffeur for the French consulate, was traveling north on General Taylor Street in order to get to St. Charles Avenue. When he arrived at the Chestnut Street intersection Mr. Smith proceeded across because there was no stop sign according to his testimony. Ms. Boyer also proceeded across the intersection as she was unable to see the stop sign located at the corner of Chestnut because it was completely obstructed by overgrown tree branches.
After a trial of the matter, the lower court found that the City of New Orleans had notice of the overgrown trees and that it failed to remedy the problem. The court assessed one hundred percent (100%) liability to the City which was cast in judgment for the personal injury claim of Joseph Smith and for the property damage claims of Purolator and the Republic of France. All other claims were dismissed with prejudice.
The City of New Orleans filed this appeal, requesting that the findings of the trial court be reversed, or in the alternative, that the court find that the City was only 50% at fault in the accident.
It is not contested that the City of New Orleans is responsible for the stop sign in question. LSA-C.C. art. 2317 imposes strict liability upon the custodian of a defective thing which causes injury to another. However, in order to maintain a claim for damages caused by the condition of things within the care and custody of a public entity, the complainant has the burden of proving that the public entity had actual or constructive notice of the defect and had a reasonable opportunity to remedy the defect, but has failed to do so. LSA-R.S. 9:2800(B); Gaspard v. State, Through Dept. of Transp. and Development, 596 So.2d 336, 338 (La. App. 3 Cir.1992) writ denied 600 So.2d 664 (La.1992).
"Constructive notice shall mean the existence of facts which infer [imply] actual knowledge." LSA-R.S. 9:2800(C).
We agree with Fragala v. City of Rayville, 557 So.2d 1118, 1121 (La.App. 2 Cir.1990) writ denied 561 So.2d 103 (La.1990) where the court said:
"Actual notice is knowledge of the dangerous defects or conditions by a corporate officer [or] employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities. Garrett v. Sewerage & Water Board of New Orleans, 235 So.2d 164 (La. App. 4th Cir.1970)."
The trial judge specifically ruled that the City "... had actual notice, not constructive notice, but actual notice." Although the trial court made no explicit finding that the City had a reasonable opportunity to correct the defect, we must assume the existence of such a finding as being necessarily implicit in the judgment.
However, this Court finds as a matter of law that the plaintiffs failed to carry their burden of proof that the City of New Orleans had sufficient opportunity to correct the defect complained of, i.e., the foliage obstructing the stop sign. Therefore, the aforementioned implicit finding of the trial court to the contrary is erroneous.
The trial judge, in rendering judgment made the following statement:
The Court has before it an exhibit introduced by the Defendant, Purolator, and *1234 Plaintiff in cross, that the City on June 3rd, 1988 received notice, inter-departmental notice, from the streets to the Parkway and Park Commission notifying them that tree trimming was necessary because branches of a tree were obstructing the stop sign in question.
Now, the query is: Were the trees trimmed and then re-grew? We have no knowledge that they were trimmed. Number two, we have no knowledge that if they were trimmed, were they trimmed again? This Court finds the City had notice of the problem coupled with Mr. Dart's statement that with a previous accident he had informed the policeman that the stop sign had foliage on it. (Emphasis added)
From the above it is apparent that the finding by the trial court that the city had notice was based primarily on the interdepartmental communication from the Department of Streets to the Parks and Parkways Commission. But the City contends that the trial judge failed to note that portion of the notice that indicates that the corrective work was performed, i.e., the trees were trimmed on June 21, 1988.
Purolator counters that it used the memorandum only as demonstrative evidence and that it was never actually introduced into evidence by any party. Purolator contends that as that document is not in evidence, that the City cannot use it in support of the City's argument that appropriate corrective measures were taken in 1988 in response to actual notice of the defect.
Purolator's argument is a two edged sword. If the document cannot be used as evidence by the City, then it cannot be used by Purolator to support its argument that the City had notice. More significantly, the trial court is deprived of the major factor upon which it relied in reaching its finding that the City had notice.
At the trial the document was used in connection with the testimony of Ida Daniels, an administrative services supervisor with the City of New Orleans, Department of Streets. Purolator argues that Ms. Daniels testified that the City received actual notice of the obstructed stop sign in 1988. Ms. Daniels never so testified. All she did in response to questions put to her by counsel for Purolator, was to describe the contents of the document shown to her, the same as if she had been asked simply to read the document. Her testimony concerning the contents of the document are meaningless in the absence of the document itself.
Ms. Daniels never independently verified the contents of the document, i.e., she meticulously avoided confirming or denying the truth of any the of the contents of the document, and carefully limited her testimony to describing without comment what appeared on the face of the document as may be seen by reference to her testimony. We cannot even tell from her testimony whether the document from which she was reading was authentic. We cannot tell what pertinent parts of the document she failed to read into the record. Without the document her testimony has no probative value.
Outside of the document Ms. Daniels' testimony refutes the contention that the City had notice:

CROSS EXAMINATION
BY MR. LaNASA:
Q. Miss Daniels, would these records reflect any complaint sent in to the City about the obstruction to that stop sign?

A. The division was requested, the maintenance division was requested to research all complaints. They did not forward any complaints with the packet that was forwarded to me. (Emphasis added).
MR. VASSER:
I would like to give the court a copy of an exhibit that I have marked No. 2 and provide a copy to Miss Daniels.
EXAMINATION BY MR. VASSER:
Q. Miss Daniels, would you flip to the last page of Exhibit 2 and identify this document, please?

*1235 A. This is an interoffice memo from the direction of the Department of Streets to the Superintendent of Parkway and it is dated June 3rd, 1988 regarding an obstruction at the intersection of Chestnut and General Taylor.
Q. To clarify, the obstructions are some plants of two separate trees which are obstructing the stop sign, is that correct?
A. Yes.
Q. What is the date that this complaint was received by the City of New Orleans?
A. This form does not reflect a date that the complaint was received. (Emphasis added)
Q. What is the date that the form was prepared?
A. June 3rd, 1988.
Q. If you would, flip to the very next page, the second to last page and go to Page 4 and tell me, based upon this document, whether or not the City had performed any work on the trees that were obstructing this stop sign within one year prior to September 13, 1990? (Emphasis added)
A. I can only speak for the Department of Streets, and there was no record of any work done in the twelve month period prior to or one month after 9/13/90. (Emphasis added)
If the document is in evidence, it defeats plaintiffs' contention that the City failed to take corrective measures in 1988.
If the document is not in evidence, then Ida Daniels testimony is worthless to prove that the City had notice. More significantly, the trial court's reliance on that document as the major reason it found that the City had notice is no longer valid.
Regardless of whether the document was in evidence or not, the City must prevail on this point. Any reliance by the trial court on the document or Ms. Daniels' testimony to establish notice to the City would be error. Therefore, if the record contains no other sufficient evidence of adequate and timely notice to the City we must reverse.
The record contains no other such notice. Although the trial court relied primarily on the interdepartmental memorandum just discussed to support its finding of notice to the City, the trial court also made reference to the testimony of Ted Dart.
Mr. Dart testified as follows:
BY MR. LaNASA:
Q. Mr. Dart, how long had you lived near that intersection?
A. Since May of 1990, about four or five months before.
Q. Four months before the accident?
A. Right.
Q. Did you ever call the City and tell them that there was a problem about alleged shrubbery obstructing the stop sign?
A. I never called the City.
Q. Did you ever call the City?
A. No, sir.
Q. Do you know anyone who called the City?
A. No, Sir.
Q. Do you know if the City was ever put on notice about that?
A. I put a police officer on notice about that on another accident.
THE COURT:
Before this accident?
THE WITNESS:

I believe it was before, yes. (Emphasis added)
THE COURT:
There was an accident before this one?
THE WITNESS:
Yes.

*1236 THE COURT:
You came out and told the police officer that you couldn't see the stop sign?
THE WITNESS:
Right.
Mr. Dart's testimony seems weak and vague. But we will not substitute our judgment of its persuasiveness for that of the trial judge who had the advantage of actually observing not only this witness, but the added advantage of comparing the performance of all witnesses. Rosell v. ESCO, 549 So.2d 840 (La.1989).
For the same reason we will accept for purposes of argument Officer Mercadel's (the investigating officer) testimony to the effect that it was his duty to report stop sign obstructions to the City. But Officer Mercadel clearly testified that he was unaware of the overgrown condition before the accident. Notice to Officer Mercadel after the accident is not adequate notice under LSA-R.S. 9:2800. Concomitantly, we accept for purposes of argument the trial court's conclusion implicit in its comment on Mr. Dart's testimony at the conclusion of the trial to the effect that Mr. Dart told an unnamed policeman about the stop sign obstruction and that policeman in turn had a duty to report the situation to the City, thereby satisfying the LSA-R.S. 9:2800 requirements for actual notice.
However, even though we accept that Mr. Dart's testimony established conclusively the entirety of the version of the facts that he presented, i.e., that he notified a member of the New Orleans Police Department of the obstructed stop sign prior to accident, there was nothing in his testimony from which the timing of such notice could be inferred. As a matter of law Mr. Dart's testimony failed to discharge plaintiffs burden of proving that the City was afforded "a reasonable opportunity to remedy the defect" as required by LSA-R.S. 9:2800. This Court does not require the plaintiffs to establish the precise time of notice. But they must at least establish a range of time. Here plaintiffs did neither.
Thus it has been established that the interdepartmental memorandum and the testimony of Ida Daniels and Mr. Dart all fail to prove that the City had timely notice that the stop sign was obstructed on September 13, 1990 when the accident occurred. A review of the balance of the record fails to reveal any other evidence that would support a finding of timely notice. In the absence of such other evidence we must conclude that plaintiffs have failed to carry their burden of proof.
Applying the manifestly erroneous clearly wrong standard, we find no error in the trial court's finding that the obstructed stop sign was the sole cause of the accident. Therefore, there was no manifest error in the trial court's finding that the driver of the Purolator van, Rebecca Boyer, was free from fault.
For the foregoing reasons all portions of the judgment of the trial court against the City of New Orleans are reversed.
REVERSED.
BARRY and PLOTKIN, JJ., dissent with reasons.
BARRY, Judge, dissents with reasons.
The record supports the factual findings of the trial judge.
Maintaining our standard for factual review, I would affirm. Rosell v. ESCO, 549 So.2d 840 (La.1989).
PLOTKIN, Judge, dissents with reasons.
The trial court held the City of New Orleans solely liable to the plaintiffs because the stop sign regulating the intersection was completely concealed by overgrown tree branches. The court further factually concluded that the City had actual notice and by inference from its reasons for judgment, the City had reasonable opportunity to correct the defect.
The majority improperly reverses the judgment by concluding that the plaintiffs *1237 failed to prove that the City had sufficient opportunity to timely correct the defect, i.e., remove the obstruction covering the stop sign.
The jurisprudence and evidence in this record does not support the majority's factual determination. Furthermore, there is sufficient factual evidence to justify the trial court finding, which are not manifestly erroneous.
Three witnesses demonstrated timely actual and constructive notice. The first, Mrs. Ida Daniels, administrative supervisor of the New Orleans Department of Streets, testified from an interoffice memo dated June 3, 1988, from the Director of the Department of Streets to the Director of the Parkway and Park Commission. It is undisputed that the City received a complaint about two trees that were obstructing the stop sign at Chestnut and General Taylor Streets. She was unable to testify from the record whether the work requested was ever completed. Nor could she locate any complaint or work at the intersection for one year prior to the accident.[1]
The City, in its brief, attaches a copy of the interoffice memo to its brief. It claims that the complaint was corrected by June 21, 1988. Thereafter, no further complaints were received. Therefore, the City did have notice of the dangerous condition at the time of the instant accident.
First, the interoffice memo was not introduced into evidence and cannot be considered by this Court. Sutton v. Montegut, 544 So.2d 1181 (La.App. 5th Cir.1989). Second, the City should be held liable because under the circumstances of this case. La.C.C. art 2317 imposes strict liability upon the City as the custodian of a thing which causes injury to another if the plaintiff to proves that the public body has actual or constructive notice, as required by LSA-R.S. 9:2800(B). Constructive notice is defined as "[t]he existence of facts which infer actual knowledge." LSA-R.S. 9:2800.
Once the City receives actual notice of a dangerous condition that is a natural, continuous, perpetual, and repetitive condition such as the normal regrowth of trees, bushes or shrubberyand which obscures a traffic semaphore, creating an inherently dangerous condition, the custodian is responsible for the dangerous condition created by any regrowth, even if not specifically notified of the recurrence of the condition, because it should have known about it and corrected it. The City has a duty to keep the tree's branches from obscuring or camouflaging the stop sign after receiving notice of the dangerous condition because it possessed constructive notice thereafter. Therefore, the City had notice and the opportunity to correct the defect before the accident, based on the initial notice in June, 1988.
The second witness, NOPD Officer Christopher Mercadel, investigated the accident. He confirmed that the stop sign at that intersection was completely obstructed by an overgrown tree. More importantly, he testified that, as part of his official duties, it is his responsibility to report dangerous conditions to the City and, in this case, he did report it.
The third witness, Tom Dart, lived at the corner of the intersection of Chestnut and General Taylor since May, 1990, approximately four months before the accident. He testified that prior to the instant accident, other accidents occurred because the Chestnut Street stop sign was obscured by foliage. He stated that he informed an NOPD investigator of the stop sign obstruction. Although he was unable to provide a specific date, there is no evidence to impeach his credibility. The trial judge accepted his testimony and concluded that the City had notice and the timely opportunity to correct the defect.
Following the mandates of Rosell v. ESCO, 549 So.2d 840 (La.1989); this court is constrained from reversing a trial court judgment based on a credibility determination because a decision regarding credibility can virtually never be "manifestly erroneous. *1238 The trial court correctly concluded that the City had timely notice of the defect and the opportunity to correct it. Accordingly, I would affirm the judgment of the trial court.
NOTES
[1] This exhibit was not offered into evidence.