CARAWAY, J.
 

 [ pedestrian filed suit against the City of Shreveport for damages for personal injuries she sustained when she tripped and fell on an uneven concrete sidewalk. Finding that the plaintiff failed to prove that the defendant had prior knowledge or constructive notice of the sidewalk’s condition, the trial court granted judgment in favor of the City of Shreveport. Finding no manifest error in the trial court’s judgment, we affirm.
 

 Facts
 

 On June 23, 2001, at approximately 12:30 in the afternoon, Mary Graham, who was 65 years of age at the time, tripped and fell on an uneven portion of a sidewalk located at the 1400 block of Claiborne Avenue in Shreveport, Louisiana. Graham, who had just visited her aunt in a nearby nursing home, was traversing the sidewalk on her way to her sister’s house when she fell. Graham testified that prior to the accident, she had never been on this particular sidewalk and that at the time of the accident, adjacent trees were casting shadows across the sidewalk, making the elevated concrete difficult to see by a pedestrian.
 

 No one witnessed Graham’s fall. Her sister, who was driving by, later found her lying on the sidewalk, unable to get up on her own. Later in the evening, Graham went to the emergency room, complaining of pain in her left wrist. X-rays were taken and interpreted as normal. Graham was diagnosed with a wrist sprain, placed in a splint, and released from the hospital that same night.
 

 | ¡¡The day after the accident, a relative of Graham’s went back to the scene of the fall and took several photographs. These photographs, later admitted into evidence, revealed a lift at a joint between two concrete slabs forming the part of the sidewalk where the accident occurred. Graham contends that the roots of nearby trees underneath the sidewalk caused the concrete to elevate over time.
 

 On June 21, 2002, Graham instituted suit for her injuries resulting from the sidewalk accident, alleging negligence and fault on the part of the City of Shreveport (the “City”), including failure to properly inspect and maintain the sidewalk.
 
 [1]
 
 The bench trial occurred in February 2009.
 

 James Holt, who was the deputy director for the City’s Office of Public Works at the time of the accident, testified at trial. Holt managed five divisions within
 
 *529
 
 the Office of Public Works, including streets and drainage, the division responsible for the construction, maintenance and cleaning of sidewalks in Shreveport. Holt’s testimony revealed that there is no program for routine inspection of sidewalks. Instead, sidewalk repairs are instituted only in response to complaints the City receives. The City utilizes the Citizen Contact and Response (CCAR) computer program, which records a complaint, assigns the complaint a number and tracks the progress of repairs. The CCAR program has been in existence since the |,.¡early 1990s. The testimony of Cassandra Singleton, the custodian of records for the Department of Public Works for the City of Shreveport, stipulated to at trial, revealed that a CCAR records search was instituted after Graham’s fall. The results of this indicated no prior notice, complaints, or requests for sidewalk repair in the 1400 block of Claiborne Avenue.
 

 With respect to the condition of the sidewalk, Holt further testified that once a lift exceeds one-half inch it becomes a tripping hazard. Holt personally went out to inspect the sidewalk where Graham allegedly tripped. His inspection revealed two lifts in the sidewalk, both of which presented tripping hazards. He immediately prepared a work order and the sidewalk was repaired.
 

 After a review of the evidence and witnesses’ testimony, the trial court ruled in favor of the City, dismissing plaintiffs claims at her costs. In its ruling, the trial court stated that “the City of Shreveport did not have any actual or constructive knowledge of any defect at the location prior to Mrs. Graham’s fall.” It further noted that medical causation remained at issue in light of other falls which the plaintiff experienced in 2001.
 

 Discussion
 

 Graham’s claim against the City for damages allegedly resulting from a vice or defect in the sidewalk is rooted in Louisiana Civil Code Articles 1,2317
 
 [2]
 
 and 2317.1.
 
 [3]
 
 More specifically, the special statute for public entities which parallels Article 2317.1 is La. R.S. 9:2800.
 
 [4]
 
 These pro
 
 *530
 
 visions establish a duty of care over the property owned by the defendant or property in his custody. Under these provisions, the City, as the owner of a public right of use over the sidewalk, has the duty to ensure the public’s use and possession of the sidewalk. However, “a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages, the defect complained of must be dangerous or calculated to cause injury.”
 
 Boyle v. Board of Sup’rs of Louisiana State Univ. and Agric. & Mechanical College,
 
 96-1158 (La.1/14/97), 685 So.2d 1080. Moreover, under La. R.S. 9:2800 the City cannot be liable for damages resulting from a defective condition without proof that it had actual or ^constructive knowledge prior to the occurrence of the particular vice or defect which caused the damage, and that the city had a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800 B;
 
 Campbell v. Louisiana Dept. of Transp. and Dev.,
 
 94-1052 (La.1/17/95), 648 So.2d 898.
 

 In
 
 Jones v. Hawkins,
 
 98-1259 (La.3/19/99), 731 So.2d 216, the Louisiana Supreme Court rejected this court’s prior view that the lack of an ongoing inspection plan for a municipality’s public properties may establish constructive knowledge so as to allow for liability under La. R.S. 9:2800. The court ruled:
 

 After considering the foregoing opinions, we find we cannot agree with the second circuit’s position that lack of a plan constitutes constructive knowledge of the defect. The definitions of actual and constructive knowledge are facially incompatible with the implication of knowledge from a lack of a plan to inspect. Actual knowledge has been defined as “knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities.” See, e.g,
 
 Fragala v. City of Rayville,
 
 557 So.2d 1118 (La.App. 2 Cir.1990);
 
 Boddie v. State,
 
 27,313 (La.App. 2 Cir. 9/27/95), 661 So.2d 617;
 
 Purolator Courier Corp. v. City of New Orleans,
 
 93-1068 (La.App. 4 Cir.1994), 635 So.2d 1232. Constructive knowledge is defined by La. R.S. 9:2800 as the existence of facts that infer actual knowledge. The absence of a plan of inspection in no way shows or implies that an employee of the appropriate public entity has actual knowledge of a dangerous defect or condition. Indeed, quite the opposite is true; in the absence of other facts, such as recorded complaints about a defect, lack of a plan implies that employees of the public entity have no actual knowledge of dangerous defects or conditions. Thus, a holding that lack of a plan infers knowledge effectively eviscerates the notice requirement of La. R.S. 9:2800.
 

 |
 
 cJd.
 
 at 220. The court also held that the municipality’s duty to use reasonable care in the maintenance of its public property does not encompass periodic inspection of such property.
 

 A review of the
 
 Jones v. Hawkins
 
 ruling nevertheless shows that the court did not reject prior cases involving sidewalk or roadway defects in which liability was found because of the great length of time that the defects had existed. This temporal inquiry surrounding the ex
 
 *531
 
 istence of the defect can establish circumstantially constructive notice to a public entity when the defect is shown to have existed for such a length of time that the public entity should have discovered the defect with the exercise of reasonable care. While this is not the same as a duty to make periodic inspections, which the court rejected, the length of time that an obvious sidewalk defect exists can result in a reasonable conclusion of the municipality’s constructive knowledge.
 

 Additionally, it must be recognized that in the other important ruling of our Supreme Court, in
 
 Boyle, supra,
 
 a clearly visible sidewalk defect had existed for several years. Nevertheless, the court determined that the uneven sidewalk did not present an unreasonable risk of harm. Discussing the
 
 Boyle
 
 ruling in
 
 Pamplin v. Bossier Parish Community College,
 
 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, we said:
 

 Thus, in
 
 Boyle,
 
 under the risk-utility balancing test with an openly apparent irregularity being an undisputed fact, our highest court overruled the trier-of-fact and determined on policy grounds that not every visible and discoverable irregularity in a sidewalk results in the imposition of fault. With the issues of constructive notice and unreasonable risk of harm clearly intertwined in the
 
 Boyle
 
 ruling for visible irregularities in sidewalks, the court partially justified its | conclusion of no liability by stating that “the fact that the first accident did not occur during the defect’s existence of several years while heavy traffic provided the exposure, is a factor to be taken into consideration along with the size of the defect, in determining the relative risk of injury.”
 

 Id.
 
 at 896.
 

 Graham first argues that a
 
 de novo
 
 review of the record is warranted as a result of the misapplication of the legal standard required under La. R.S. 9:2800 by the trial court. She claims that the trial court only examined whether or not the City had actual knowledge of the defect, not whether or not it had constructive notice. This argument lacks merit. As quoted above, the court’s written ruling provides ample evidence that the court took appropriate consideration of the correct legal standard under the statute.
 

 Accordingly, the district court’s findings pursuant to La. R.S. 9:2800 are subject to manifest error review.
 
 Graves v. Page,
 
 96-2201 (La.11/7/97), 703 So.2d 566;
 
 Johnson v. City of Winnfield,
 
 37,939 (La.App. 2d Cir.12/10/03), 862 So.2d 433. Under this standard, the appellate court will review the entire record to determine whether the trial court’s findings were clearly wrong or manifestly erroneous.
 
 Stobart v. State through Dept. of Transp. and Dev’t.,
 
 617 So.2d 880 (La.1993). In order to reverse, the appellate court must find that a reasonable basis does not exist for the finding of the trial court and that the finding is clearly wrong.
 
 Mart v. Hill,
 
 505 So.2d 1120 (La.1987).
 

 From the above guidance of the
 
 Jones
 
 and
 
 Boyle
 
 rulings, we agree with the trial court’s conclusion that the record does not support a finding of the City’s negligence in this case. With no evidence of the City’s actual | ^knowledge of the problem, there is also no significant circumstantial basis for a determination of constructive notice. The tree shown in the photos of the accident scene was some distance from the raised joint between the concrete slabs on which Graham tripped. Thus, there is no clear inference that the growth of the tree over a lengthy time period had gradually caused the defect. Other than the photos of the accident site, Graham presented no other evidence con
 
 *532
 
 cerning the length of time that the problem existed.
 

 Moreover, as in the
 
 Boyle
 
 case, the raised portion of the slab was less than two inches.
 
 [5]
 
 While the City admits that this presents a trip hazard, the same trip hazard existed in
 
 Boyle.
 
 Nevertheless,
 
 Boyle’s
 
 risk-utility balancing test determined that the trip hazard did not present an unreasonable risk of harm, which is the legal standard for the determination of a defect in the property. That ruling was made concerning a sidewalk on the LSU campus where heavy pedestrian traffic occurred. Here, the sidewalk in question runs in front of residential homes where pedestrian traffic would be considerably less. Thus, the inevitable problem of uneven joints between the concrete slabs of sidewalks according to
 
 Boyle
 
 does not present an unreasonable risk of harm in every case. Such question of the existence of an unreasonable risk of harm in this case therefore further supports the trial court’s conclusion regarding the City’s lack of constructive notice.
 

 |
 
 aConclusion
 

 For the above reasons, the ruling of the trial court is affirmed. Costs of this appeal are assessed to appellant.
 

 AFFIRMED.
 

 [1]
 

 . In October 2002, the City filed a motion for summary judgment arguing diat under a Shreveport City Ordinance the responsibility of maintaining the sidewalk fell to the abutting property owner, not the City. The trial court granted the City's motion, concluding that as a matter of law, the City had no duty to maintain the sidewalk and therefore it was not liable for plaintiff's injuries. In
 
 Graham v. City of Shreveport,
 
 38,953 (La.App. 2d Cir.9/22/04), 882 So.2d 718,
 
 writ denied,
 
 04-2463 (La. 1/07/05), 891 So.2d 685, the trial court's ruling was reversed, reasoning that the ordinance simply established the legal relationship between the city and the adjoining property owner. It did not confer tort liability on adjoining property owners unless that property owner actually created or caused the defect involved.
 

 [2]
 

 . Art. 2317. Acts of others and of things in custody
 

 We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
 

 [3]
 

 . Art. 2317.1. Damage caused by ruin, vice, or defect in things
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
 

 [4]
 

 .La. R.S. 9:2800 dealing with the limitation of liability for public bodies, provides in pertinent part, as follows:
 

 A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
 

 B. Where other constructions are placed upon slate property by someone other than tlie state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
 

 C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the
 
 *530
 
 occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
 

 D. Constructive notice shall mean the existence of facts which infer actual knowledge,
 

 [5]
 

 . The photo of the raised joint with a measuring tape beside it shows that at the very edge of the joint next to the adjoining lawn, the slab was raised two inches. However, the slab was raised at an angle so that the trip hazard was much less in the middle of the sidewalk.