Judgment rendered October 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,761-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TEQUILLA DORSEY                                    Plaintiff-Appellant

versus

PIER LANDINGS SHREVEPORT,                          Defendants-Appellees
L.L.C. C/O SACHS INVESTING
COMPANY, THE CITY OF
SHREVEPORT, U.L. COLEMAN
COMPANY, LTD, AMTRUST
INSURANCE COMPANY OF
KANSAS, INC., AND
ASSOCIATED INDUSTRIES
INSURANCE COMPANY, INC.

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 595854

Honorable Ramon Lafitte, Judge

* * * * *

JACK BAILEY LAW CORPORATION          Counsel for Appellant,
By: Jack M. Bailey, Jr.               Tequilla Dorsey
    Jack M. Bailey, III


RON CHRISTOPHER STAMPS, LLC           Counsel for Appellee,
By: Ron Christopher Stamps            City of Shreveport
    Britney A. Green
    Dale Lewis Sibley


* * * * *

Before COX, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

On October 1, 2015, plaintiff, Tequila Dorsey, while pushing her infant son in his stroller, was walking from her apartment in the Summer Trace Apartments to the Wal-Mart located in the Shreve City Shopping Center on Shreveport Barksdale Highway in Shreveport, Louisiana. There is no sidewalk, so she was walking in a grassy drainage area between the Pier Landing apartment complex and Knight Street. The area is frequently used by residents of the apartment complexes on Knight Street to access businesses located in the shopping center down the street. Ms. Dorsey fell in a hole in an open ditch area in front of the Pier Landing apartment complex while walking to Wal-Mart and sustained serious injuries, including a broken leg.

Ms. Dorsey filed suit against, *inter alia*, the City of Shreveport ("the City"), seeking damages for the injuries she received as a result of her fall. The subject hole was located on property owned and maintained by the City. A water/sewer line runs for some distance, including underneath the area in which the hole was located, and the City owns and maintains the water/sewer line. In her petition, Ms. Dorsey's allegations include that: the hole into which she fell and sustained her injuries was a dangerous condition (not open and obvious as it was covered with grass) which the City knew or should have known about and/or created on property in its custody and control; it was responsible for maintaining and keeping the property free of dangerous hazards; and, the City breached its duty to exercise reasonable care by performing inspections and taking other actions to protect her from injuries resulting from the hazardous condition they allowed to exist on their property.

The City answered Ms. Dorsey's petition, and both sides engaged in discovery. The City filed a motion for summary judgment, asserting that because Ms. Dorsey is unable to show that the City had actual or constructive notice of the hole into which she stepped, she is unable to prove all necessary elements of her claim against the City. Thus, based on the results of the parties' discovery, there are no genuine issues of material fact as to the issue of the City's notice, and the City is entitled to summary judgment in its favor.

Ms. Dorsey opposed the City's motion for summary judgment and filed a cross-motion for summary judgment asking for judgment in her favor on the issue of liability (although she also sought an award of damages therein).

According to Ms. Dorsey, evidence produced by the City during discovery undisputedly showed that it had actual knowledge of a defect or problem in the water/sewage line as early as September 14, 2015. In support, she attached the affidavit and expert report of her witnesses who opined that such a defect can create sinkholes in ground above a water/sewer line, and that such a shift was the most likely cause of the sinkhole into which Ms. Dorsey fell. She argued the foreseeability of the risk to the public caused by the shifting of earth from a water leakage and compared the cost to repair against the risk of harm to individuals. She then pointed out that the City did not even attempt to make any repairs or warn the public of any issue posed by the faulty water/sewer line. Ms. Dorsey urged the trial court to find the City solely liable for the injuries and damages sustained by her and award her $250,000, inclusive of all damages and costs.

The City filed an opposition to Ms. Dorsey's motion for summary judgment, pointing out that none of the events that she claimed constituted "notice" of the hole were sufficient to put the City on notice of *that* alleged defect or condition. Three of the calls were about a sewage leak in a ditch *near*, but not at, 3131 Knight Street. Not only were these calls about a different issue (sewage), but they were at a different address altogether, urges the City. There is no documentation of anyone ever notifying the City of the existence of a hole. Furthermore, her expert's conclusion about a "sinkhole" is irrelevant to the case at hand, urges the City.

Following a hearing held on both motions for summary judgment, the trial court denied the motion for summary judgment filed by Ms. Dorsey and granted the motion for summary judgment filed by the City. It is from this adverse judgment that Ms. Dorsey has appealed.

## DISCUSSION

### *Applicable Legal Principles*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as

3

to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742, p. 6 (La. 1/28/14), 144 So. 3d 876, 882; *Richard v. Hall*, 03-1488, p. 5 (La. 4/23/04), 874 So. 2d 131, 137.

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, p. 11 (La. 4/12/05), 907 So. 2d 37,48, citing *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512, p. 26 (La. 7/5/94), 639 So. 2d 730, 751; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire, supra*; *Chanler v. Jamestown Insurance Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

Louisiana C.C.P. art. 966(D)(1) provides:

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

4

When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 967(A), the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise set forth in La. C.C.P. art. 967(A), must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

The only documents that may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Louisiana C.C.P. art. 967(A) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts s would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

Louisiana C.C.P. art. 966 (D)(2) provides:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank,* 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Resources Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Continental Casualty Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

In order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. La. R.S. 9:2800; *Shear v. Trail Blazers, Inc.*, 21-00873 (La. 12/21/21), 329 So. 3d 819, 822; *Chambers v. Village of Moreauville*, 11-898 (La. 1/24/12), 85 So. 3d 593, 597; *Lasyone v. Kansas City Southern R.R.*, 00-2628 (La. 4/3/01), 786 So. 2d 682, 690; *Minor v. Red River Parish Police Jury*, 54,182 (La. App. 1/12/22), 333 So. 3d 549; *Harris v. City of Shreveport*, 53,101 (La. App. 2 Cir. 4/22/20), 295 So. 3d 978, 982. Failure to meet any one statutory element will defeat a negligence claim against a public entity. *Id.*; *Breitling v. Shreveport*, 44,112 (La. App. 2 Cir. 5/13/09), 12 So. 3d 457.

Before a municipality can be held liable for injuries resulting from a defect in the condition of a thing in its custody, the municipality must have had actual or constructive notice of the particular defect that gave rise to or caused the injury. *Harris*, *supra*; *Stevens v. City of Shreveport*, 49,437 (La.

App. 2 Cir. 11/19/14), 152 So. 3d 1071, *writ denied*, 15-0197 (La. 4/17/15), 168 So. 3d 399, *cert. denied*, 577 U.S. 844, 136 S. Ct. 154, 193 L. Ed. 2d 114 (2015). Actual notice has been defined as knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities. *Jones v. Hawkins*, 98-1259, p. 6 (La. 3/19/99), 731 So. 2d 216; *Harris, supra* at p. 7, 295 So. 3d at 983.

Under La. R.S. 9:2800(D), constructive notice is defined as the existence of "facts which infer actual knowledge." This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable diligence. *Johnson v. City of Bastrop*, 41,240, p. 4 (La. App. 2 Cir. 8/1/06), 936 So. 2d 292, 294. *See also Williams v. Ruben Residential Properties*, 46,040 (La. App. 2 Cir. 3/2/11), 58 So. 3d 534. The plaintiff must make a positive showing of the existence of the condition prior to the fall. *Harris, supra*; *Ton v. Albertson's, LLC*, 50,212 (La. App. 2 Cir. 11/18/15), 182 So. 3d 246, *writ denied*, 15-2320 (La. 2/5/16), 186 So. 3d 1169.

The periodic inspection of one's property for defective conditions is intertwined with the concept of constructive notice. *Minor, supra*. Lack of inspection is only one factor by which the fact finder may determine that the defect existed for such a length of time that the public entity should have discovered the defect with the exercise of reasonable care. *Id.*; *Graham v.*

7

*City of Shreveport*, 44,994 (La. App. 2 Cir. 1/27/10), 31 So. 3d 526, *writ denied*, 10-0440 (La. 4/30/10), 34 So. 3d 294.

*Analysis*

***Trial Court's Grant of Summary Judgment Motion Filed by the City***

According to Ms. Dorsey, the trial court erred in granting summary judgment in favor of the City. Ms. Dorsey contends that the trial court erred in finding that the City met its burden of establishing that it did not have actual or constructive notice of the hole into which she fell, and that there were no genuine issues of material fact related to this requirement of her claim against the City for liability under La. R.S. 9:2800. She further takes issue with the fact that the trial court disregarded the expert witness opinion evidence she produced that was uncontroverted by any such evidence by the City.

On the other hand, the City asserts that the trial court did not err in granting its summary judgment motion and dismissing Ms. Dorsey's claims against it based upon its finding that there was no genuine issue of material fact that the City did not have actual or constructive notice of the hole in the ditch and further, that pedestrians are not expected to be walking in a ditch.

The record, i.e., the parties' depositions, affidavits, or attachments thereto, either in support of or in opposition to, the City's or Ms. Dorsey's motion for summary judgment, establishes the following facts. The hole into which Ms. Dorsey stepped while walking to the store was on property owned and maintained by the City. This area is a drainage area sometimes used by pedestrians to walk from apartment complexes located on Knight Street to local businesses as there is no sidewalk. The evidence also establishes that there is a sewer line that runs a long distance underneath the

drainage area. On the opposite side of the street (the side across from Ms. Dorsey's accident) runs a water main line. There is no municipal address assigned to this specific area.

As noted previously, Ms. Dorsey lived at the Pier Landing Apartments at 3131 Knight Street. The City received a telephone call on September 14, 2015, from Sharon Watson, a resident at 3201 Knight Street, Summer Trace Apartments, that there was *sewage* on the ground in front of that complex. In response to that complaint, on the next day, September 15, 2015, City employee Larry Henderson was dispatched to 3201 Knight Street to check the area. Specifically, Work Order #178237 states, "check leak in ditch." Henderson mistakenly closed out Work Order #178237 with the comment, "No *city water main* here to check leak." Unfortunately, the water line was across the street from the apartment complex—the sewage was coming out of the sewer line that ran under the ditch in front of the apartment complex. The city worker did not find the sewage leak since he did not even identify or note that there was an underground sewer line running in front of the apartment complex at 3201 Knight Street.

At 9:00 a.m. on September 18, 2015, Sharon Watson, the resident who had previously contacted the City about sewage on the ground in front of the complex at 3201 Knight Street, made a second call to the City, presumably about the sewage that had not been addressed. The City operator referenced the same ticket number, #178237. Ms. Watson made a third call to the City at 2:44 p.m. on September 18, 2015, this time leaving her address and telephone number. *Within two weeks*, on October 1, 2015, Ms. Dorsey fell into a hole in the *sewage* drainage area in front of the Pier Landing

9

apartments at 3191 Knight Street, approximately 200 feet away from the apartment complex located at 3201 Knight Street.

In their depositions, both the City's Superintendent of Streets and Drainage, Ernie Negrete, and its Director of the Water and Sewerage Dept., Barbara Featherston, stated that the sewer line ran for quite a long distance, including directly under the area in which the hole was located. They also acknowledged that a main sewer line ran within 10-15 feet of the area, and that this main sewer line connected to the regular sewer line buried beneath the ditch right of way. Both Negrete and Ms. Featherston agreed that the main water line was located on the opposite side of the street.

Ms. Featherston testified that the City's Public Works Department records were "migrated" from an old work order system approach to a new system called "City Works," which resulted in some "loss" of earlier data. She also noted that the City does not have a regular inspection program, but does have areas they do preventative and routine maintenance on—for example, in known areas that require repairs or those known to have back-ups or clogs, including those caused by grease. When asked about any records regarding inspections or maintenance done in the area of Knight Street, Ms. Featherston specifically noted that the apartment complex at 3131 Knight Street (which is where Ms. Dorsey lives) has had a lot of issues with grease, and the City is called out "a lot" to that area.

According to Ms. Featherston, a dye test was performed on the sewer line in the area of the hole in late 2015. Dates were not exactly clear because of the changeover to the new system regarding complaints and work orders. Ms. Featherston noted, "I can't state for sure that this is the same sinkhole, but it's within that area. You know, it's manhole 10 and 13 are,

you know a thousand feet apart." She also confirmed that the dye tests are performed on the sewer lines if the City receives notice of a sinkhole located within 20 feet of their pipe.

Ms. Featherston said the City "disputed" that the responsibility for addressing the refill or repair of this hole was within the purview of either the Water and Sewer Department *or* the Streets and Drainage Department, and it had not been repaired or filled as of June 3, 2019. She described the situation as a "lack of communication." According to Ms. Featherston, the City had not identified the cause of the hole as of June 3, 2019, and had not filled it.

Ms. Dorsey's expert, Dr. W. Tom Witherspoon, a licensed professional engineer, stated in his affidavit that the hole likely progressed over a long period of time. Dr. Witherspoon also opined that such a hole can be caused by either a break in a water line or a collapse or drying out of the surface soil in the area where there is a drainage swale. According to Dr. Witherspoon, the hole, which was in the City right of way and therefore the responsibility of the Dept. of Streets and Drainage Public Works to maintain, should have been noticed by the City, who had the responsibility to fill and properly compact the hole. Dr. Witherspoon also noted that the whoever was responsible for mowing the area should have noticed the hole when performing maintenance of the ditch area. As Negrete testified in his deposition, the City's Streets and Drainage Department cut and maintained the roadside ditch area, and whenever there was a water leak or "something," that department would notify the Water and Sewerage Department. However, Negrete also stated that the Pier Landing Apartment complex "took care" of the area, which was "pretty well manicured."

11

Based upon our *de novo* review, we find that there are multiple factors that bear upon the issue of constructive notice in this case which, under the particular circumstances involved herein, involve genuine issues of material fact and as such, cause this matter to be inappropriate for summary judgment. *See, Minor, supra; Harris, supra.*

First, the evidence presented by Ms. Dorsey in opposition to summary judgment showed that the City had actual notice of leaking sewage close to the ditch in which Ms. Dorsey fell two weeks prior to her accident. The worker who responded to Ms. Watson's complaints about the sewage leakage at the Autumn Trace apartments approximately 200 feet from the hole into which Ms. Dorsey fell less than two weeks later did not exercise due diligence to determine the cause or location of the leaking sewage. A rational person could conclude that the two addresses, 3201 and 3131 Knight Street, were close enough in proximity that the hole could have been discovered with reasonable diligence, and a reasonable trier of fact could find that the connection between the sewage and the hole was sufficient to put the City on notice of the defective condition. *See, Harris, supra.*

Additionally, Ms. Dorsey attached in support of her opposition to the City's motion the expert report and affidavit of Dr. Witherspoon, a professional engineer. It was Dr. Witherspoon's opinion that the hole into which Ms. Dorsey fell progressively developed over time, likely caused by a leak in the City's sewer line that ran underneath the City's right of way. Dr. Witherspoon further opined that as the hole progressed over time, the City had sufficient time to reasonably inspect, find, and identify it, as the hole was in the City's right of way, with the City's sewer line running underneath.

12

This evidence was not objected to or contradicted by expert testimony offered by the City. Instead, the City's evidence revealed the lack of an inspection program, a haphazard record-keeping system, and an apparently lackadaisical approach to citizen reports of potential problems or defects. For example, the deposition testimony of the City representatives of the two departments involved—the Dept. of Streets and Drainage/Public Works and the Dept. of Water and Sewerage—showed that there was confusion regarding **which department** was even responsible for fixing the hole. Negrete stated that it was not the responsibility of the Dept. of Streets and Drainage, while Ms. Featherston testified that there was poor communication, and one department had not acted, wrongfully believing that the other department was responsible for the work. All of these, taken together, support Ms. Dorsey's claim that the facts of this case support an inference of actual knowledge that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable diligence. *See* La. R.S. 9:2800(D).

When the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and is sufficient to allow a reasonable fact finder to conclude that the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So. 2d 1049; *Harris, supra. See also, Marks v. Schultz*, 20-0197 (La. App. 1 Cir. 12/10/20), 316 So. 3d 534. In light of the foregoing, we find that the trial court erred in failing to find that Dr. Witherspoon's opinion created genuine issues of material fact sufficient to defeat the City's motion for summary judgment.

***Trial Court's Denial of Summary Judgment Motion Filed by Ms. Dorsey***

Ms. Dorsey also contends that the trial court erred in denying her cross-motion for summary judgment on the issue of liability. We find no error in the trial court's determination that Ms. Dorsey did not establish ***all of the elements of her La. R.S. 9:2800 claim against the City***. This Court's reversal of the City's motion for summary judgment is based ***solely*** upon our determination that the trial court erred in finding that Ms. Dorsey did not establish actual or constructive notice on the part of the City, and there were genuine issues of material fact related to this issue to be determined by the factfinder at trial, not by the judge on summary judgment. The record is devoid of evidence of any of the other elements necessary for Ms. Dorsey to establish her claim against the City, such as whether the defect presented an unreasonable risk of harm; whether the City failed to take corrective action within a reasonable time; and causation. This assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, that part of the trial court's judgment granting the motion for summary judgment filed by the defendant, the City of Shreveport, is reversed. That part of the trial court's judgment denying the motion for summary judgment filed by the plaintiff, Tequila Dorsey, is affirmed. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal, $3,681.02, are assessed equally to the parties.

**REVERSED IN PART, AFFIRMED IN PART, REMANDED.**