646 So.2d 502 (1994)
Dr. Frank SCHALOW, Ph.D.
v.
LOYOLA UNIVERSITY OF NEW ORLEANS.
No. 94-CA-0797.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1994.
Richard E. McCormack, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for appellee.
William W. Miles, Law Office of William W. Miles, New Orleans, for appellant.
Before SCHOTT, C.J., and BARRY and BYRNES, JJ.
*503 BYRNES, Judge.
Dr. Frank Schalow began his teaching career at Loyola as a part time employee in the fall semester of 1982. At the beginning of the 1987-88 academic year, Dr. Schalow became a full-time, probationary member of the ordinary faculty, with the rank of assistant professor and one year credit towards tenure for prior service. Although he was promoted to associate professor at the beginning of the 1990-91 academic year, he was issued a "terminal" contract at the beginning of the 1991-92 academic year, the same year he was eligible to be considered for tenure. Based upon a majority vote of the tenured members of his department, his employment would terminate in one year.
Dr. Schalow sued Loyola for breach of his employment contract. The trial court found in favor of Loyola. Dr. Schalow appealed. We affirm.
Dr. Schalow acknowledged in his brief that "[h]is employment in each successive academic year from 1987-88 constituted a new appointment with Loyola for that respective year ... and each successive appointment was evidenced by a separate contract which specifically incorporated the terms and conditions of certain sections of the Loyola University Handbook."
Dr. Schalow also acknowledged that the doctrine of termination of employment at will prevails in Louisiana, Mix v. University of New Orleans, 609 So.2d 958 (La.App. 4 Cir., 1992), writ den. 612 So.2d 83 (La.1993), but that doctrine may be modified by contractual agreement between the parties. In this case the parties agree that there were formal written contracts between the parties that were renewed annually. These contracts incorporated by reference chapters four through sixteen of the Loyola Faculty Handbook.
The relevant provisions of that contract, contained in the Faculty Handbook are as follows: [Emphasis and page numbers added throughout]
... Each non-tenured member of the Ordinary Faculty is considered to be on probation. [p. 4-1]
* * * * * *
The norms for appointment and advancement fall into three general areas: teaching, research and publication, and community service. [p. 4-1]
* * * * * *
... Candidates for promotion shall excel in the following qualities: [p. 4-2]
a. teaching: [p. 4-3]
* * * * * *
b. scholarship: [p. 4-3]
* * * * * *
c. community service: [p. 4-3]
* * * * * *
The application of these norms to an individual is a matter of collective judgment of his or her peers. No one person need excel equally in each norm; rather the relative weights accorded the norms may vary depending upon the qualities of the person, the nature of the field, the needs of the department and College, and the goals of the University.
Norms can only serve as guidelines for what will always remain fallible human judgment. It is expected that those responsible for making such judgments will exercise prudence in evaluating the suitability of the faculty member as a professional colleague, the promise of making a long-term contribution to the academic field and his or her ability to move the University toward its goals and educational ideals. [p. 4-5]
* * * * * *
Each non-tenured member of the Ordinary Faculty is considered to be on probation. All such faculty shall receive an annual written evaluation from the Dean of the appropriate College. This evaluation shall cover the strengths and weaknesses of the faculty member toward fulfillment of those professional responsibilities as outlined in Chapter 7. [p. 4-8]
* * * * * *
If a faculty member [on probation] alleges that a decision against his or her renewal was based on inadequate consideration, *504 he or she may request in writing a review by the University Conciliation Committee. The Committee will review the allegation and determine whether the decision was the result of inadequate consideration in terms of relevant standards of the University. If the University Conciliation Committee finds that adequate consideration was not given to the faculty member's qualifications, it will request reconsideration indicating the respects in which it believes that initial consideration may have been inadequate. It will provide copies of its findings to the faculty member, the President, and any other administrative officer or faculty body that made the decision. The University Conciliation Committee will not substitute its judgment for that of those responsible for the decision, but will restrict its concern to the question of adequate consideration. [p. 4-8]
* * * * * *
So long lasting are the effects of the granting of tenure that the fact of promotion over a period of five to six years does not merit tenure. [p. 5-1]
* * * * * *
Contracts of the tenured faculty members are entered into with the presumption that they will be renewed at the same or better terms ... Tenured faculty contracts may not be terminated except for cause ... [p. 6-1]
* * * * * *
Contracts of members of the non-tenured Ordinary Faculty cannot be cancelled during the contract period except by mutual consent or through the procedure outlined in the section of this handbook on procedures for termination of faculty appointments. These contracts are entered into with the expectation that, if renewed in accordance with the provisions of this Handbook relating to the renewal of non-tenured faculty, they will be renewed on the same or better terms and conditions as contained in the contract entered into for the current academic year. [p. 6-2]
* * * * * *
Each faculty member has the right to be judged by his or her colleagues, as well as by the administration, in accordance with clear criteria and fair procedures in matters of promotion, tenure and discipline. [p. 8-1]
* * * * * *
The faculty exercises the primary right of determination in matters of faculty status. This area includes appointments, reappointments, decisions not to reappoint, promotions, the granting of tenure, faculty discipline and dismissal. The primary right of faculty for determination in such matters is based on the fact that its judgment is central to general educational policy. Furthermore, scholars in a particular field or activity have the chief competence for judging the work of their colleagues. Determinations in these matters by faculty action is through rank and tenure procedures, reviewed by the Dean and the Vice President for Academic Affairs with the concurrence of the President and the Board of Trustees. [p. 8-2]
* * * * * *
Termination of an appointment with tenure, or of a probationary appointment before the end of the specified term, may be effected by the University only for adequate cause. [p. 9-1]
From pertinent sections of the handbook, several things stand out:
1. The "Ordinary Faculty" is divided into the categories of tenured and non-tenured.
2. Non-tenured faculty is considered to be on probation.
3. Tenured faculty can only be dismissed for cause.
4. Termination of non-tenured faculty before the end of the specified term may only be for cause.
Dr. Schalow's contracts were for successive one year terms as a probationary employee. He could not be terminated during the one-year term of any of those contracts except for "cause." Conversely, one must infer that at the expiration of any of these one-year contracts Dr. Schalow could be dismissed *505 without cause. This is the significant difference between tenured and non-tenured/probationary faculty. This distinction is evident throughout the provisions of the handbook. For example, the handbook when referring to the contracts of tenured faculty uses the language "will be renewed"; but when referring to the contracts of the non-tenured faculty it employs the conditional language "if renewed." This distinction is implicit in the terms "tenured" versus "non-tenured/probationary."[1]
Any ambiguity should be construed in favor of employment at will. Thorne v. Monroe City School Bd., 542 So.2d 490, 492 (La. 1989). The Supreme Court explained that "[t]he historical purpose of tenure, which originated in higher education, was the protection of academic freedom by preventing arbitrary or repressive dismissal." Thorne, 542 So.2d at 491. Conversely, implicit in the status of non-tenured/probationary employee is the assumption that protection against arbitrary or repressive dismissal is absent, i.e., the doctrine of employment at will prevails.
This Court concludes that as Dr. Schalow was a non-tenured/probationary employee, he could be terminated by Loyola at the expiration of his annual contract without cause. Although of Dr. Schalow's annual evaluations were positive for the most part, Loyola was not limited to such evaluations in making its employment decisions regarding non-tenured/probationary employees. The record shows that Loyola had a rational basis for its decision to terminate Dr. Schalow and that its actions were not arbitrary, capricious or in bad faith.
As required by his contract, Loyola gave Dr. Schalow twelve months notice that it was not going to renew his employment. He was allowed a review of the decision to terminate him by the University Conciliation Committee which found that he had not been given adequate consideration. However, the handbook makes it clear that this committee has only the power to "request reconsideration", not the power to decide. The handbook expressly forbids the University Conciliation Committee from substituting "... its judgment for that of those responsible for the decision ..."
Dr. Schalow complains that he was dismissed because of a lack of "collegiality." He contends that this is not a valid basis for dismissal as it is not one of the specifically enumerated criteria or "norms" for evaluation. However, the handbook speaks in terms of "... evaluating the suitability of the faculty member as a professional colleague..." which is certainly broad enough to include collegiality. The minutes of the October 3, 1990 meeting at which the tenured members of Dr. Schalow's department voted not to renew his contract[2] give specific reasons for the decision not to renew which were not frivolous and concluded by saying:
No one was calling into question Dr. Schalow's competence as a philosopher. All admit that he is very good. All admit that he is a popular teacher.... The problem is one of collegiality....
To insist on reasons equivalent to those needed to terminate a tenured faculty member is to destroy the distinction between probationary and tenured faculty. [Emphasis added]
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Black's Law Dictionary, Sixth Edition, defines "tenure" in this context as the: "Status afforded to teacher or professor upon completion of trial period, thus protecting him or her from summary dismissal without sufficient cause or economic reasons.... Tenure denotes relinquishment of the employer's unfettered power to terminate the employee's services."
[2] See p. 8-2 of the Handbook, supra.