WILLIAMS, J.
 

 | ,TIie plaintiffs, Joann and Sam Brei-tling, appeal a judgment in favor of the defendant, City of Shreveport (“the City”). The trial court dismissed the plaintiffs’ claims, finding that the City did not have custody of the sidewalk where the accident occurred and did not have actual or constructive notice of the dangerous condition. For the following reasons, we affirm.
 

 FACTS
 

 At approximately 4:00 a.m. on the morning of July 26, 2004, Joann and Sam Brei-tling were walking between two casinos on a sidewalk located along the east side of Clyde Fant Parkway in Shreveport. The Breitlings had traveled to Shreveport to gamble and as they were walking toward the Hollywood Casino, Joann Breitling (“Breitling”) tripped on a part of the sidewalk where the bricks had settled approximately one and one-half inches below the concrete. She fell to the pavement, injuring her right knee and elbow. Breitling later sought medical treatment for her injuries.
 

 The sidewalk where Breitling fell was located on land owned by the City, which leased the premises on May 19, 1999 to QNOV, a general partnership, for the construction of a casino-hotel project. The lease provided that the lessee “shall construct and maintain sidewalks within the premises adjacent to Clyde E. Fant Memorial Parkway.” The sidewalk was built by a contractor hired by Hollywood Casino (“the casino”) and designed in compliance with the “Streetscape” design standard established by the City in the 1990’s for use in the downtown area. The Streetscape standard specified that the sidewalk be built using rectangular concrete sections with brick pavers around the edge.
 

 ^Subsequently, the plaintiffs, Joann and Sam Breitling, filed a petition for damages against the defendants, City of Shreveport and the casino. The plaintiffs later settled their claim against the casino. After a trial limited to the issue of liability, the court concluded that the City was not liable for the plaintiffs’ injuries, finding that the City did not design, build or maintain the sidewalk and did not have actual or constructive notice of the dangerous condition. The court rendered judgment dismissing plaintiffs’ claims. The plaintiffs appeal the judgment.
 

 DISCUSSION
 

 The plaintiffs contend the trial court erred in finding that the City did not have
 
 *459
 
 actual or constructive notice of the defect in the sidewalk. Plaintiffs argue that the City was aware of the dangerous condition that caused Breitling’s injury because there had been problems with differential settlement of bricks in a number of sidewalks built according to the Streetscape design. For the purpose of addressing this assignment of error, we shall assume that the City exercised control over the sidewalk at issue.
 

 No person shall have a cause of action against a public entity for damages caused by the condition of things within its care and custody unless such entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. LSA-R.S. 9:2800. In order to recover against a public entity for damages due to a defective thing, the plaintiff must prove by a preponderance of evidence that: (1) the thing that caused her damages was |3in the defendant’s custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (8) the defendant possessed actual or constructive notice of the defect, yet did not take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of plaintiffs harm.
 
 Jones v. Hawkins,
 
 98-1259 (La.3/19/99), 731 So.2d 216;
 
 Johnson v. City of Bastrop,
 
 41,240 (La.App. 2d Cir.8/1/06), 936 So.2d 292. Failure to meet any one statutory element will defeat a negligence claim against a public entity.
 
 Williams v. City of Mansfield,
 
 42,319 (La. App. 2d Cir.8/15/07), 962 So.2d 1187.
 

 Under LSA-R.S. 9:2800, constructive notice is defined as the existence of facts which imply actual knowledge. This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable care.
 
 Johnson, supra; Lutz v. City of Shreveport,
 
 25,801 (La.App. 2d Cir.5/4/94), 637 So.2d 636,
 
 writ denied,
 
 94-1487 (La.9/23/94), 642 So.2d 1294. The trial court’s findings of fact are subject to the manifest error standard of review. The appellate court must determine whether the trial court’s conclusion is reasonable based upon the record as a whole.
 
 Graves v. Page,
 
 96-2201 (La.11/7/97), 703 So.2d 566.
 

 In the present case, Christopher Hicks testified that in July 2004 he was working as an emergency medical technician and security guard for the casino. Hicks stated that he observed Breitling sitting on the sidewalk after her fall and completed an accident report. Hicks testified that an accident |4had previously occurred on the sidewalk near the casino. However, he did not say what caused that accident and he had not called the City to report any prior accident. Hicks testified that he had never seen any city employees working on that sidewalk.
 

 Tanita Baker, who was accepted as an expert in civil engineering, testified that in August 2004 the City requested that she view the sidewalk located between the casinos on Clyde Fant Parkway and give an opinion as to the cause of the differential settlement of bricks. Baker stated that she took photographs of the soil beneath the bricks, measured the elevation of different locations along the sidewalk and prepared a report. Based on her investigation, Baker opined that the inadequate slope of the sidewalk prevented proper drainage and allowed rainfall to percolate through the brick joints, saturating the base material and causing the bricks to settle. Baker testified that this process would have occurred over a certain period
 
 *460
 
 of time, but she did not know the length of time involved in the present situation. Baker stated that she was told by Robert Westerman, an engineer employed by the City, that there had also been a problem with differential settlement of bricks at a walkway near the Texas Street bridge.
 

 Ron Norwood, the engineer for the City, testified that his duties included publishing specifications for the construction and maintenance of streets and sidewalks. Norwood stated that the sidewalk where Breitling fell was a public sidewalk located on city-owned land subject to the casino lease. Norwood testified that since approximately 2000, he had been aware of “isolated areas” of differential settlement of bricks at various sidewalk |5locations downtown. He stated that the City would make repairs when a problem with a sidewalk was made known to the City and that there had been sporadic incidents of settling bricks, but no widespread problem. Norwood testified that no person had previously complained to the City about a tripping hazard at the sidewalk location where Breitling fell. In addition, he stated that the casino had never contacted the City Engineer’s office concerning any pri- or accidents or uneven bricks on that sidewalk.
 

 Jim Holt testified that in 2004, he was deputy director of the City’s Department of Operational Services responsible for the operation of the divisions of solid waste, streets and drains. Holt stated that he was familiar with the Streetscape design used for sidewalks in the downtown area. Holt testified that in some areas of downtown, bricks became dislodged when heavy trucks rode onto the sidewalk while turning. Holt stated that he was aware that some years after bricks were installed along Texas Avenue, the City received phone calls concerning “one or two” places where bricks had settled and those had been replaced. He acknowledged that his department budget included a specific line item for the repair of sidewalk bricks.
 

 Additionally, Holt testified that there were no work orders showing that the City had performed any work on that part of the sidewalk where Breitling fell; nor had anyone complained to his department about a problem with the bricks at that location prior to her accident. Holt stated that in April 2004, the City had repaired bricks on the sidewalk at the intersection of Clyde Fant Parkway and Milam Street, approximately two blocks from the casino.
 

 | ñJoann Breitling testified that after her fall she was assisted by Hicks, who told her that others had previously fallen in front of the casino. Breitling acknowledged that she could not identify anyone else who had fallen at that location before her accident and that she did not know of any previous complaints to the City about a defect in that part of the sidewalk.
 

 Samuel Breitling testified that he was walking with Joann when she tripped and fell on the sidewalk. Mr. Breitling stated that he later took photographs of the accident site showing that bricks had settled below the concrete, creating an uneven place where his wife caught her foot. He testified that Hicks commented that other accidents had occurred on that sidewalk. Mr. Breitling stated that he did not personally know of anyone else who had fallen at that location prior to his wife’s fall in July 2004.
 

 In their brief, the plaintiffs argue that the City possessed constructive knowledge of the dangerous condition of the sidewalk at issue because the City was aware that a similar problem with excessive settling of bricks had affected a number of sidewalks built in conformity with the Streetscape design. However, the plaintiffs’ argument is not supported by the applicable law. LSA-R.S. 9:2800 expressly provides that a
 
 *461
 
 public entity will be liable for damages caused by things in its care only when it has actual or constructive notice of “the particular vice or defect” which caused the damage. Thus, the evidence that other sidewalk bricks had settled at various locations downtown does not impute to the City knowledge of the particular defect in the sidewalk that caused Breitling’s injuries.
 

 In addition, the testimony of city employees demonstrated that the 17City had not received any prior complaints about uneven bricks in the sidewalk at issue. Although Hicks indicated that other persons previously had fallen in front of the casino, there was no showing that the City had been notified of any prior accidents or that any such accident had involved the same defective condition which caused Breitling’s fall. Nor did the evidence show that the defective condition had existed for a sufficient period of time to have been discovered in the exercise of reasonable care. The expert engineer was unable to determine the length of time required for the settling of the bricks in the sidewalk at issue.
 

 Based upon the evidence presented, the plaintiffs failed to establish that the City received any notice of the specific defect in the sidewalk where Breitling fell. Consequently, we cannot say that the trial court was clearly wrong in finding that the City did not possess actual or constructive notice of the dangerous condition prior to the accident and was not liable for the plaintiffs’ damages. Thus, the assignment of error lacks merit. In reaching this conclusion, we pretermit a discussion of the remaining assignments of error.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the appellants, Joann and Samuel Breitling.
 

 AFFIRMED.