WILLIAMS, J.
|TThe plaintiffs, Douglas and Dana Benson, appeal a judgment denying their motion for partial summary judgment and granting summary judgment in favor of the defendants, State of Louisiana, the Board of Trustees for State Colleges and Universities, the University of Louisiana System and the University of Louisiana-Monroe (collectively referred to as “ULM”). The district court found that the plaintiffs failed to prove that ULM had actual or constructive knowledge of a defective seat. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.
FACTS
On May 19, 2005, Douglas Benson (“Benson”) and his wife, Dana Benson, attended the West Monroe High School graduation ceremony of their daughter at the Fant-Ewing Coliseum on the ULM campus. The stadium has 7,000 fold-down *546 seats and is the site of approximately 50 events per year. The seats have been in use since they were installed in 1970. Near the end of the ceremony, Benson’s seat broke and he fell down to the floor, landing on his buttocks and hitting his head. Benson suffered injuries as a result of the fall.
The plaintiffs, Douglas and Dana Benson, filed a petition for damages against the defendants, ULM and the Ouachita Parish School Board.[1] Following discovery, the plaintiffs filed a motion for partial summary judgment alleging that ULM had constructive notice of the defective seat and failed to repair it. In response, ULM filed a motion for summary judgment on the ground that it did not have actual or constructive notice of |2the defective condition of the seat.
After a hearing on the motions for summary judgment, the district court issued written reasons, finding that the plaintiffs failed to satisfy their burden of proving that ULM had constructive notice of the defective condition of the seat. Thereafter, the court rendered judgment granting the defendants’ motion for summary judgment, denying the plaintiffs’ motion and dismissing their claims. The plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the district court erred in granting ULM’s motion for summary judgment and denying their motion. Plaintiffs argue that they satisfied their burden of proving that ULM had constructive notice of the hazardous condition by presenting evidence showing that at the time of the accident the defective seat was 35 years old, that many other seats had broken and been removed and that ULM had never performed a physical inspection of the Coliseum seats.
We are liable for the damage caused by the things which are in our custody. LSA-C.C. art. 2317. No person shall have a cause of action based on liability under Article 2317 against a public entity for damages caused by the condition of things in its care unless the public entity had actual or constructive notice of the particular defect which caused the damage prior to the occurrence and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. LSA-R.S. 9:2800. To recover against a public entity for damages due to a defective thing, a plaintiff must prove that: (1) the thing which caused the damage was in the custody of the ^public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of plaintiffs harm. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216; Ricks v. City of Shreveport, 42,675 (La.App.2d Cir.10/24/07), 968 So.2d 863. Failure to meet any one statutory element will defeat a negligence claim against a public entity. Breitling v. Shreveport, 44,112 (La.App.2d Cir.5/13/09), 12 So.3d 457.
Constructive notice is defined as the existence of facts that imply actual knowledge. LSA-R.S. 9:2800(D). To prove constructive notice, plaintiffs must produce facts demonstrating that the defect existed for a sufficient period of time that it should have been discovered and repaired if the public entity had exercised reasonable diligence. Breitling, supra.
Appellate courts review summary judgments de novo, using the same criteria *547 that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Central Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, writ denied, 2009-1491 (La.10/2/09), 18 So.3d 122; Whitaker v. City of Bossier City, 35,972 (La.App.2d Cir.4/5/02), 813 So.2d 1269. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The burden of proof remains with the mover. However, if the mover |4will not bear the burden of proof at trial on the matter before the court, then the mover is not required to negate every essential element of the adverse party’s claim, action or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim or defense. If the adverse party fails to produce factual support to show that he will be able to satisfy his evidentiary burden of proof at trial, then there is no genuine issue of material fact. LSA-C.C.P. art. 966(C).
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Hooker v. Wal-Mart Stores, Inc., 38,350 (La.App.2d Cir.4/7/04), 870 So.2d 1131, writ denied, 2004-1420 (La.9/24/04), 882 So.2d 1142. One reason is that these subjective facts call for credibility evaluations and the weighing of testimony. Hooker, supra; Oaks v. Dupuy, 32,070 (La.App.2d Cir.8/18/99), 740 So.2d 263, writ not considered, 99-2729 (La.11/24/99), 750 So.2d 993.
In the instant case, Steven Hollis presented deposition testimony that he began working in the maintenance department of ULM in 1994 and that in 2005 he was primarily working in the Coliseum. Hollis stated that his job duties involved replacing lightbulbs, making minor plumbing repairs, and fixing stadium chairs if possible.[2] Hollis testified that he inspected the |sstadium seating before each event by walking down each row and visually cheeking the seats. According to Hollis, if he saw a seat that did not “look right,” he tried to repair the chair and if it could not be fixed then he removed the seat from use. He estimated there were about 50 chairs out of use, including some rows of chairs. Hollis stated that his visual inspection takes approximately one hour to complete, that he was not aware of any formal inspection policy of ULM and that he does not keep any records documenting when seats have been repaired. Hollis testified that he used parts from out-of-service seats to repair other seats.
Hollis also, testified that a bolt had sheared completely, causing the seat to collapse. Hollis stated that such a shear had occurred only three times in his experience and that most of the time the bolts had bent, causing the seat to visibly hang down. According to Hollis, when he saw a seat in that position during his inspection he changed the bolt. Hollis testified that this was the only incident he could recall in which a seat collapsed and injured a person. He stated that the seats were installed in 1970 and that replacement parts were no longer available. Hollis testified *548 that ULM did not know the identity of the manufacturer.
Douglas Benson testified during his deposition that he had sat in the seat during the entire graduation ceremony, except for getting up to go to the restroom. Benson stated that he did not notice anything wrong with the seat before he sat down. Benson testified that while he was sitting, the seat bottom suddenly collapsed, he fell to the floor, landed on his buttocks and hit his head. During her deposition, Dana Benson testified that near the end | Bof the graduation ceremony, Douglas was sitting in the seat when it broke. Mrs. Benson stated that the seat fell down, he slid to the floor, landed on his buttocks and hit the side of his head on the armrest. Mrs. Benson testified that the seat did not fall completely off, but was hanging down toward the floor.
In support of their motion for partial summary judgment, plaintiffs submitted the affidavit of Mitchell Wood, a licensed architect, contractor and home inspector. Wood testified that he has training and experience in public facility management and safety. Wood stated that ULM had actual knowledge that the seats were 35 years old, that many had broken over the years and that the collapse of a seat would injure the person seated. He testified that he did not believe a person could conduct even a cursory visual inspection of the 7,000 seats in the time described by Hollis. Wood opined that ULM should have thoroughly inspected every section of seats once each year to check for structural soundness. Wood opined that the walkth-rough done by Hollis was unreasonable given the age and worn condition of the seats.
In opposition to plaintiffs’ motion, ULM submitted the transcript of Mitchell Wood’s deposition, in which he testified that he could not determine what caused the chair to collapse. Wood stated that metal fatigue, a sheared bolt or loose bolts could cause that type of seat to collapse. Wood testified that he could not dispute the statement of Hollis that the seat failed because a supporting bolt had sheared. Wood did not know of any other injuries caused by a collapsing seat at the Coliseum. _[¿Wood stated that he could not look at a bolt and determine when it was going to shear, or break, because a shear is a catastrophic failure that does not happen slowly, but occurs rapidly. He testified that metal failure “is usually very rapid and sudden and there’s not a lot of signals that’ll tell you that it is going to rapidly break and fail[.]” Although Wood testified that he was unaware of the number of times the seats were used in one year, he opined that 25 years was the typical useful life of such seats. Wood further opined that because of the advanced age of the stadium seating and the defective condition of many other seats, ULM should have performed a thorough physical inspection of the seating annually.
Citing Saulny v. Tricou House, L.L.C., 02-1424 (La.App. 4th Cir.1/29/03), 839 So.2d 392, the plaintiffs argue that ULM had constructive notice of the defective seat because a number of other stadium chairs had broken. In Saulny, supra, the court found that under the circumstances of that case, the restaurant had constructive notice of the defective condition of the seat because the owner was aware that other seats had similarly broken.
In the present case, the plaintiffs presented evidence that ULM was aware that over the years other seats of the same age as the seat at issue had broken. The plaintiffs also produced their expert’s opinion that a periodic physical inspection was required because the old seats in the Coliseum were likely to break, as shown by the numerous seats that had been removed *549 from use by ULM. Wood opined that given the age of the seats and the number of broken seats, the inspection by ULM was inadequate and that the seats should have been physically inspected annually. Wood further opined that |8the failure of the metal bolt was foreseeable and that the old bolts should have been replaced.
As stated above, Wood disputed Hollis’ testimony and opined that a person could not complete even a cursory inspection of the 7,000 seats within an hour. Thus, plaintiffs presented testimony to create a genuine issue of material fact as to whether the defective condition of the seat had existed for a sufficient period of time to have been discovered and repaired in the exercise of reasonable care. Credibility determinations by the trier of fact are necessary to resolve the conflicting testimony.
Based upon this record, we find that a genuine issue of material fact exists regarding the notice of the defective condition which caused the plaintiffs’ damages. Consequently, the district court erred in granting the defendants’ motion for summary judgment and correctly denied plaintiffs’ motion for partial summary judgment. Accordingly, we reverse the court’s summary judgment in favor of ULM and remand this matter for further proceedings.
CONCLUSION
For the foregoing reasons, that part of the district court’s judgment granting ULM’s motion for summary judgment is reversed and the denial of plaintiffs’ motion for partial summary judgment is affirmed. This matter is remanded for further proceedings. Costs of this appeal in the amount of $122.50 are assessed to the appellees, State of Louisiana, the Board of | ¡¡Trustees for State Colleges and Universities, the University of Louisiana System and the University of Louisiana-Monroe.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

. Ouachita Parish School Board was subsequently dismissed from the lawsuit.

. According to Hollis, at the time of the accident he was "running sound" on the floor of the stadium.