CARAWAY, J.
hThe trial court rendered summary judgment in favor of the city-defendant after determining that no material issue of fact remained regarding the city’s actual or constructive knowledge relating to a handicap ramp which dislodged as the elderly plaintiff grabbed it and fell to the ground. Finding that genuine issues of material fact remain, we reverse and remand.

Facts

On the afternoon of March 23, 2011, Bernice Walters,[1] accompanied by her son, Jerry Wright, took care of personal business at the West Monroe City Court facili *421 ty. Wright parked his van in a handicap parking space next to a concrete ramp with side rails. The ramp had a very slight slope because its function was merely to provide access up to the level of the parking lot’s curb. Consequently, the ramp extended from the curb for almost a car length into the parking lot. On each side of the ramp as it ascended to the curb was a metal handrail. The handrails were secured by metal footings bolted into the edge of the concrete ramp. Because of this configuration of the ramp in the parking lot, Wright was able to park his vehicle immediately adjacent and parallel to the ramp and one of the handrails.
Walters entered and exited the building up and down the ramp without incident. She ambulated with the aid of a cane and her son and did not utilize either of the handrails. After exiting down the ramp, she positioned herself to enter the passenger side of her vehicle next to the | ¡¡handrail. She reached for the handrail for support to attempt to sit in her car, but the handrail gave way falling toward Walters. All three supporting poles and the aluminum handrail top detached from the three footings. Walters fell to the ground and sustained multiple injuries to her right side.
On March 27, 2012, Walters instituted suit against the City of West Monroe (“the City”) and its liability insurer seeking damages for the injuries she sustained in the accident. Specifically Walters alleged that the City failed to exercise reasonable care in properly maintaining and inspecting the handrail in question.
On December 9, 2013, the City sought summary judgment on the grounds that Walters would be unable to carry her burden of proof to show either that the handrail was unreasonably dangerous or that the City had actual or constructive notice of its condition. Walters opposed the summary judgment and urged that material issues of fact remained relating to the issues of actual and constructive notice. Walters also contended that the City failed to comply with the Americans with Disabilities Act (“ADA”) by failing to inspect the ramp.
In oral reasons for judgment, the court ruled in favor of the City, after determining that there “appears to be no evidence that could support plaintiffs claim that the City had actual or constructive notice” of the condition of the handrail. A signed judgment dismissing the suit followed and this appeal by Walters ensued.
On appeal, Walters argues that the trial court erred in not recognizing the ADA as a successful defense to summary judgment and in determining | sthat no material issue of fact remained as to the issues of actual and constructive notice of the ramp condition.

Discussion

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880; Hakim v. O’Donnell, 49,140 (La.App.2d Cir.6/25/14), 144 So.3d 1179.
Appellate courts review summary judgments de novo, under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Hakim, supra; Benson v. State, 48,300 (La.App.2d Cir.10/9/13), 124 So.3d 544. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material if its existence or nonexistence may be essential to the *422 plaintiffs cause of action under the applicable theory of recovery. Hakim, supra.
Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on summary judgment, the mov-ant is not required to negate all essential elements of the adverse party’s 14claim; he need only point out an absence of factual support for one or more essential elements of the adverse party’s claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Hakim, supra.
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. La. C.C. art. 2317. Under the special statute applicable to public entities, La. R.S. 9:2800 (hereinafter “the Statute”), no person shall have a cause of action based on liability under Article 2317 against a public entity for damages caused by the condition of things in its care unless the public entity had actual or constructive notice of the particular defect which caused the damage prior to. the occurrence and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. La. R.S. 9:2800(C).
To recover against a public entity for damages due to a defective thing, a plaintiff must prove that: (1) the thing which caused the damage was in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of plaintiffs harm. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216; Benson, supra. Failure to meet any one statutory element will defeat a negligence claim against a public entity. Benson, supra.
|fiIn this case, the handrail was owned by and in the custody of the defendant. The second element of the inquiry concerns the unreasonable risk of harm posed by the condition of the handrail. With the railing appearing to be bolted to the concrete by three metal bars, its total collapse was an .unusual and unexpected event that demonstrated its defective condition. Therefore, the City’s defense turns on its lack of knowledge or constructive notice of the defective condition of the handrail.
The Statute provides for. the requirement that “the public entity had actual or constructive notice of the particular vice or defect” in its property which caused the accident. La. R.S. 9:2800(C). This language in subpart C of the Statute uses the disjunction “or,” distinguishing two separate types of notice. Nevertheless, sub-part D then gives a less than clear expression of constructive notice, as follows:
2800(D). Constructive notice shall mean the existence of facts which infer actual knowledge.
See, Linda McKinnis, Comment, Limiting Strict Liability of Governmental Defendants: The Notice Requirement of the 1985 Legislation, 46 La.L.Rev. 1197 (1986).
One interpretation of this statutory definition might, be that constructive notice amounts only to a body of circumstantial evidence that proves actual knowledge from the strong inferences of that evidence. Such view, however, would make *423 actual notice and constructive notice virtually the same, contrary to the clear distinction between the two expressed in subpart C. Moreover, such limited understanding of constructive notice runs contrary to the legislative expressions for actual and constructive | (¡notice set forth in the revision of the law for strict liability in 1996 with the enactment of Civil Code Article 2317.1.[2] As set forth in that article, the notice element requires that the custodian/owner “knew or, in the exercise of reasonable care, should have known” of the defect.
The expression for actual and constructive notice of Article 2317.1 is also employed in Civil Code Article 2322 for defects in buildings. Importantly, the Louisiana Supreme Court has equated the measure for negligence under subpart C of the Statute with Article 2322, including the substantive expression in that Civil Code article for constructive notice. Broussard v. State ex rel. Office of State Bldgs., 12-1238 (La.4/5/13), 113 So.3d 175, 183 n. 4. Accordingly, we will consider the public entity’s constructive notice of a defect in its property under the same measure of Articles 2317.1 and 2322 of the Civil Code, 1.e. whether the public entity “in the exercise of reasonable care, should have known” of the defect.
The documentation submitted in support of and opposition to the motion regarding the issue of notice included photographs of the repaired ramp and handrails, the broken handrail and footings which remained bolted to the concrete. Additionally, the following factual information was shown.
1)The City instructs employees to report any hazardous conditions which they may observe as they perform the duties of their job.
2) Representatives of the City of West Monroe had received no reports of any accident or injury involving the handicap ramp or 17observed any unusual appearance to the ramp; no repairs were made to the ramp prior to the accident.
3) The incident location is used daily by an unknown, but substantial number of persons.
4) The ramp’s exterior maintenance is limited to cleaning and blowing debris by the City groundskeeper who drives through every morning, picking up trash and checking plants.
5) The City had no records of examinations or inspections of the area. No evidence of any written or actual inspection procedures was provided in support of the motion for summary judgment.
6) Neither Wright nor Walters noticed anything unusual about the ramp or handrails. As Walters attempted to get into her car, she faced the facility and grabbed the rail. The rail “fell and knocked me over.” It “came towards me when I grabbed it.”
City Marshal, William Guyton, had been in his position for 22 years. On the day of the incident, he was informed by the clerk of court that Walters fell and asked to “check on the situation.” Guyton observed that “the rail was broken down,” and “flat on the ground.” He took photographs and “put the rail up to the side where nobody else could trip or walk over it.” Guyton was able to identify a photograph which shows the bent rail as having a “tear.” Guyton testified that in his opinion, “some *424 one had backed into it apparently and broke it loose,” because of “the way it was bent.” He described it as having “bent these pieces at the top which broke those pieces off at the bottom.” He also identified rusted bolts on two of the three broken footings. Guyton had no idea who inspected the ramp and did not know if the handrails have ever been inspected. In Guyton’s opinion the defect was hidden because the weakness was in the circular part of the broken footing.[3]
| sFrom these facts, the ramp and handrail’s construction extending into the parking lot and adjacent to parking spaces exposed the railing to the possibility of damage caused by a vehicle. There was no curb protection for the railing, which was attached to the edge of the gradually rising ramp. The toppling of the railing indicates that a vehicle or some other event or events with some force caused the railing to become dislodged from the three metal footings bolted to the concrete ramp. The tear in one of the metal pipes and the bend reported by Guyton do not appear so pronounced from the photos, so that Walters or others should have been easily alerted to the problem. The photos of the three footings also indicate that the metal sleeves which held up the railings were broken to varying degrees. Nevertheless, this circumstantial evidence of a possible cause of the defect leaves in some doubt the source and timing of the event that broke the railing.
The operative language for the test of constructive notice indicates that the City has a duty to act “in the exercise of reasonable care” toward its property or things in its custody. Walters additionally places emphasis on the ADA and the related federal regulations which expressly charge a public entity to “maintain in operable working condition” facilities and equipment for the usage of persons with disabilities. 28 C.F.R. § 35.138. In the absence of the exercise of that reasonable care for the railings, the factfinder might conclude that the City “should have known” of this defective railing. The record indicates that the City had no inspection policy, specifically for scheduled reviews of the handrails and footings for damages. However, 13City personnel routinely cleaned the ramp and could be expected to observe certain damage to the railing, particularly if that damage consisted of a badly bent or loose railing.
The periodic inspection of one’s property for defective conditions is intertwined with the concept of constructive notice. Lack of inspection is nevertheless only one factor by which the factfinder might determine that the defect existed for such a length of time that the public entity should have discovered the defect with the exercise of reasonable care. See Graham v. City of Shreveport, 44,994 (La.App.2d Cir.1/27/10), 31 So.3d 526, writ denied, 10-0440 (La.4/30/10), 34 So.3d 294. Other circumstantial evidence indicating the length of time that the defective condition existed before the accident and detailing the nature of the defective condition itself are factors to be weighed for the determination of constructive notice. Benson, supra.
In Benson, supra, this court reversed the granting of summary judgment in favor of a state university after determining that genuine issues of material fact remained regarding the issue of constructive. *425 notice. The defective condition of a 35-year-old stadium seat caused the accident. The plaintiff sued the university after the stadium chair suddenly collapsed, apparently without any sign of defect in the chair. Due to the age of the chairs (50 others had previously been rendered out of use) and deteriorating hardware, university staff conducted visual inspections prior to each event. Yet, maintenance personnel had observed no problem with the subject chair prior to the accident. This court also considered as crucial factors in | inreversing the summary judgment, the age and worn condition of the seats as well as the lack of adequate inspections.
In this close ease, we find that the evidence revealed in this summary judgment setting shows multiple factors which bear upon the issue of constructive notice. The damage to the three footings indicates a possibility of more than one damaging event caused by a vehicle. The rusted bolts for the footings suggest a weakness in the railing that developed over an extended time period. And finally with no specific inspection of the railings and footings by the City, there is the implication that the defective condition had existed for such a period of time that the City should have learned of the defects. The constructive notice issue under the particular facts of this case requires the weighing of the implications of multiple sources of circumstantial evidence and therefore presents material issues of fact. Accordingly, we find that this close issue is not proper for the adjudication by a summary judgment.

Conclusion

For the foregoing reasons, we reverse the summary judgment and remand for further proceedings.
REVERSED AND REMANDED.
MOORE, J., dissents with written reasons.

. Evidence of Walters’ age is absent from the record, although Walters' counsel indicates that she is in her mid to upper eighties.

. La. R.S. 9:2800 was first enacted in 1985 when this definition of constructive notice appeared. Following a successful constitutional challenge, the statute was reenacted in 1995 with the obvious goal of eliminating strict liability for public entities. This was one year before the curbing of strict liability in 1996 by the enactment of La. C.C. art. 2317.1 and other provisions.

. While the City complains in brief regarding any lay opinion of Guyton, his review rested upon what he observed and the commonsense implications of the location of the handrails and the surprise collapse of the railing reported by Walters. Also, Walters argues that it is unclear whether Guyton's comment that someone had backed a car into the railing was more than speculation and based on his knowledge of such accident.