WILLIAMS, J.
*720 The plaintiff, Dr. Reinhold Munker, appeals a summary judgment dismissing his claims against the defendant, Board of Supervisors of Louisiana State University System. The plaintiff also challenges the district court's denial of his motion for partial summary judgment. For the following reasons, the district court's judgment is reversed in part, affirmed in part and remanded to the district court for further proceedings.
FACTS
The plaintiff, Dr. Reinhold Munker, was a tenured professor of medicine at Louisiana State University Medical Center in Shreveport, Louisiana. He was officially employed by the defendant, Board of Supervisors of Louisiana State University System ("the Board").[1] The plaintiff was a professor/researcher in the field of hematology and oncology.
On the morning of August 18, 2015, the department of hematology and oncology held a staff meeting. At the conclusion of the meeting, Dr. Glenn Mills, the director of the Feist-Weiller Cancer Center, and Dr. Gary Burton, an employee in the hematology/oncology department, were having a discussion. Dr. Mills stated that the plaintiff approached them and accused Dr. Burton of not wanting him (the plaintiff) to conduct research. According to Dr. Mills, the plaintiff angrily stated, "Well then, I'll resign and I'll go to Minnesota or Washington where they appreciate me and I can do research. I was brought here to do research." Dr. Mills then angrily responded, "I accept your resignation. I'd like a letter at the end of the day giving me your resignation date."
Shortly thereafter, a series of electronic mail ("email") was exchanged between the plaintiff and Dr. Mills. The emails provided as follows:
TUESDAY AUGUST 18, 2015
Dr. Mills to the plaintiff:
9:29 a.m.
I will accept your letter of resignation today. You may set the effective date but no longer than October 1, 2015.
If you wish to remain a faculty member then I expect you to fully perform your faculty duties including teaching, outpatient clinics, supervision of trainees and research. (Emphasis added).
The plaintiff to Dr. Mills:
9:44 a.m.
As you know, a letter of resignation has to be in writing. I mentioned that serious issues in the department and section have to be fixed. (Emphasis added).
Dr. Mills to the plaintiff:
10:48 a.m.
I was following up on your statement to me and Dr. Burton you wished to resign.
*721 If you have changed your mind that is fine. (Emphasis added).
However, I expect full participation as a faculty [member] including teaching the students, residents, fellows, and in your assigned clinics.
These are difficult times and I need faculty who will work collaboratively & want to see the [LSU Feist-Weiller Cancer Center] succeed.
The plaintiff to Dr. Mills:
11:18 a.m.
I do not see efforts made by the LSU leadership to succeed. By German standards, senior faculty should write manuscripts, not dream about moving into the private domain. Will be happy to share my thoughts.
* * *
Other institutions (Seattle, Mayo Clinic) may want [sic] that I send my [curriculum vitae]. You need common sense, stop complaining. If Dr. Marion has initiated my removal from tenure, a lot of people should be asked to leave.
Dr. Mills to the plaintiff:
11:25 a.m.
Stop these emails. You are free to leave, send me your resignation. You will not tell me what to do. Further ranting emails such as these will not be tolerated. (Emphasis added).
Thereafter, Dr. Mills included Dr. Jay Marion, the department chairman, and Dr. Robert Barish, the chancellor, in the email chain. The emails were as follows:
Dr. Marion to Dr. Barish:
11:57 a.m.
Dr. Barish,
Dr. Munker claimed in his response to Dr. Mills that I was initiating his "removal from tenure." I would like to clarify that this is not the situation [.][2] (Emphasis added).
* * *
I spoke with Dr. Mills and with Dr. Eggerstedt regarding what options existed for a tenured faculty who refused to participate in ACGME[3 ] required teaching and student teaching. After our discussions, it was clear that Dr. Mills may have reminded Dr. Munker that tenured faculty still have to be mindful of their responsibilities (I was not present when they talked, but I know what Glenn and I discussed prior to his meeting with Dr. Munker.)
I wanted to clarify that I have not "initiated" his job termination or "removal from tenure" as he suggests. He was only reminded that tenure doesn't relieve an individual of their responsibilities and that tenured faculty can still be terminated for job abandonment. (Emphasis added).
Dr. Mills informed me that Dr. Munker got into an argument with Dr. Burton this morning regarding other LSU related issues. It was apparently at that time Dr. Munker stated that he "wished to resign." (Emphasis added).
I personally support the way this was handled by Dr. Mills. Dr. Munker can play by the rules or he can resign if he wishes . He should not be allowed to disrupt an entire section. (Emphasis added).
* * *
Dr. Mills to Dr. Barish:
3:52 p.m.
*722 Sorry that Dr. Munker has involved you in this. Jay is correct, Dr. Munker got into an argument with initially Dr. Burton then me at our research meeting and threatened to resign. I simply took him up on his offer and said he could give me a letter today. Although as you can see below I clearly said that he could remain but he does need to fulfill his faculty obligations. Not sure what he wants to do at this time. Will keep you informed, although he will probably do that as well. (Emphasis added).
Subsequently, on Sunday, August 23, 2015, Dr. Mills sent an email to faculty members, including the plaintiff, regarding registering for a group meeting to be held in October 2015. The plaintiff responded to the email as follows, "So Oct. 1st is our preferred day for me to leave? " Thereafter, the following emails were exchanged:
Dr. Mills to the plaintiff:
2:19 p.m.
I prefer you to stay but if you wish to leave then we will work out your departure date. I still want you to schedule a meeting to see me. (Emphasis added).
The plaintiff to Dr. Mills:
3:51 p.m.
If you want to discuss research, any time in the afternoon. If you want to discuss the conditions for me to stay, I will get a lawyer and/or a witness.
Later that afternoon, the plaintiff sent another email to Dr. Mills which contained various complaints about the department and comparing LSU standards to "German academic law." Dr. Mills did not respond. On August 27, 2015, the plaintiff received a "Notice of Immediate Dismissal." The notice, which was signed by Lisa Ebarb, Executive Director, Human Resources Management, provided:
On August 18, 2015, Dr. Glenn Mills accepted your verbal resignation and confirmed it in writing at 9:29 on the same date. At that time, it was thought that a notice/transition period to end no later than October 1st might be appropriate. It is now apparent that a notice/transition period will not be fruitful. Accordingly, your resignation is effective at close of business today.
Please contact Human Resources regarding your benefits, which may include retirement benefits, and make arrangements with your department head to vacate your office and clear campus.
The plaintiff made the following handwritten notation on the letter: "This letter does not correspond to the truth. Therefore, I am not willing to accept his letter. Thank you." The notation was signed by the plaintiff.
Thereafter, Carolyn Winner, of the human resources department, sent an email to Drs. Marion and Mills, confirming that the letter had been hand-delivered to the plaintiff in the presence of the cancer center's business manager and a university police officer. The email also informed the recipients that the plaintiff's computer access, identification badge and parking access had been disabled, his keys and identification badge had been confiscated by security, and the plaintiff had been "advised that he is not to return to campus without contacting Human Resource Management for an approved appointment." Dr. Mills responded, "Thank you."
On December 4, 2015, the plaintiff filed this lawsuit against the Board, alleging that he was "terminated without prior notice and without cause." The plaintiff also alleged as follows:
* * *
8.
As a tenured member of the faculty, Plaintiff has a property interest in employment protected by the procedural *723 due process provisions of the Fourteenth Amendment to the United States Constitution and Article 2 of the Louisiana Constitution.
* * *
11.
Because Dr. Munker was terminated without notice and without opportunity to defend himself, the termination is an absolute nullity. He should be restored to his position with full back pay and benefits.
12.
Dr. Munker is also entitled to a monetary award of damages for the injury to his personal and professional reputation caused by the unlawful termination of his employment.
* * *
The defendant filed a general denial of the petition and prayed for a jury trial. Thereafter, on July 14, 2017, the plaintiff filed a motion for partial summary judgment, alleging that he was "entitled to a judgment declaring that there was no lawful termination of his employment for the following reasons: (1) [he] did not resign; (2) his employment was terminated against his will by a person who did not have termination authority; and (3) he was terminated without procedural due process." Attached to his motion for summary judgment, the plaintiff included numerous exhibits, including copies of the email exchanges between him and Dr. Mills, the letter signed by Ms. Ebarb, the LSU-Shreveport Faculty Handbook, the Bylaws and Regulations of the Board and excerpts from the deposition of Dr. Mills.
On the same day, the defendant filed a motion for summary judgment, or in the alternative, partial summary judgment, seeking a determination that the plaintiff resigned. The defendant included various exhibits, including the plaintiff's petition, excerpts from the depositions of the plaintiff and Dr. Mills, and an affidavit executed by Dr. Gary Burton, who attested that he was "personally present when Dr. Reinhold Munker gave his verbal resignation to Dr. Glenn Mills and heard Dr. Mills accept the resignation."
Following a hearing, the district court denied the plaintiff's motion for partial summary judgment and granted summary judgment in favor of the defendant. The court stated:
* * *
Evidently, [it is] pretty obvious that a verbal statement was made. Did not see anywhere where [the plaintiff] denied having made that verbal statement. The only argument is that according to the handbook and policies, that wasn't sufficient to constitute a resignation. So, there's no genuine issue of, in my mind, that the statement was made by [the plaintiff] that he was going to resign . There's an affidavit to that affect, as well as deposition testimony by two other doctors, but no denial of that statement. (Emphasis added).
* * *
The question then becomes whether or not his resignation - statement that I will resign is sufficient or should be deemed a resignation, and the policies of the, written policies indicate that it should be in writing and tendered to a certain individual.
* * *
I do deem his statement, oral statement that he will resign being sufficient and that the University did take him at his word and issued a, I guess, a written acceptance via email that his resignation was accepted and effective on a particular date. (Emphasis added).
* * *
The plaintiff appeals.
*724 DISCUSSION
The plaintiff contends the district court erred in granting summary judgment in favor of the defendant and denying his motion for partial summary judgment. He argues that the evidence established that he did not resign; he was involuntarily terminated via the "notice of immediate dismissal." According to the plaintiff, the emails submitted by the defendant demonstrated that he "threatened to resign"; however, they did not show that he had the requisite intent to actually do so. Further, the plaintiff argues that his failure to submit a written letter of resignation, which was required by the Board's policy, further shows that he did not intend to resign. Therefore, summary judgment was not appropriate because intent was a material fact in dispute.
A summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the district court's determination of whether summary judgment is appropriate, i.e. , whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880.
At the time the instant lawsuit was filed, La. C.C.P. art. 966 provided, in pertinent part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed[.]
* * *
(B)(2) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. * * *
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
* * *
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Hines v. Garrett , 2004-0806 (La. 6/25/04), 876 So.2d 764.
When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *725 La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B) ; Larson v. XYZ Ins. Co. , 2016-0745 (La. 5/3/17), 226 So.3d 412. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Larson , supra ; Richard v. Hall , 2003-1488 (La. 4/23/04), 874 So.2d 131.
In ruling on a motion for summary judgment, the district judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett , supra . Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders , 2000-2507 (La. 12/8/00), 775 So.2d 1049 (per curiam).
The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. Quebedeaux v. Dow Chemical Co. , 2001-2297 (La. 6/21/02), 820 So.2d 542 ; Fletcher v. Wendelta, Inc. , 43,866 (La. App. 2 Cir. 1/14/09), 999 So.2d 1223, writ denied , 2009-0387 (La. 4/13/09), 5 So.3d 164.
In the instant case, the plaintiff was a tenured professor, rather than an at-will employee. The historical purpose of tenure, which originated in higher education, was the protection of academic freedom by preventing arbitrary or repressive dismissal. Thorne v. Monroe City Sch. Bd. , 542 So.2d 490 (La. 1989) ; Stanton v. Tulane Univ. of La. , 2000-0403 (La. App. 4 Cir. 1/10/01), 777 So.2d 1242, writ denied , 2001-0391 (La. 4/12/01), 789 So.2d 597 ; Schalow v. Loyola Univ. of New Orleans , 1994-0797 (La. App. 4 Cir. 11/30/94), 646 So.2d 502 ; Smith v. Bd. of Supervisors for the Univ. of La. Sys. , 2013-5505, 2015 WL 10663156 (E.D. La. 12/11/15) (unpublished).
In Smith , supra , the plaintiff was a tenured associate professor at the University of New Orleans. He filed a lawsuit alleging that the Board had denied him due process and had breached his contract of tenure when it terminated him. The Board filed a motion for summary judgment arguing, inter alia , that the plaintiff was not terminated but had voluntarily resigned. The defendant also argued that the faculty handbook did not constitute a contract that would support the plaintiff's claims for breach of contract. The federal district court acknowledged that the plaintiff did not have an express written contract of tenure and found that, pursuant to Louisiana jurisprudence, the policies set forth in the handbook could not serve as the basis for the plaintiff's breach of contract claims. However, the court stated:
Although there was no specific written tenure contract, the parties appear to agree that [the plaintiff's] achieving tenure meant that he was no longer an at-will employee.
* * *
The parties do not dispute that [the plaintiff] was a tenured professor. Accordingly, the Court finds that there is no genuine issue of material fact as to the existence of a contract.
Additionally, the court found that a genuine issue of material fact existed as to whether the plaintiff's absence from campus during the last weeks of the semester constituted a cause to terminate him.
*726 As stated above, the plaintiff filed this lawsuit alleging that he had been terminated "without prior notice and without cause." He also alleged that, as a tenured professor, he "has a property interest in employment protected by the procedural due process provisions of the Fourteenth Amendment to the United States Constitution and Article 2 of the Louisiana Constitution." Thereafter, the plaintiff moved for partial summary judgment arguing that the evidence of record established that he did not resign; LSU policy required resignations to be submitted in writing; and Dr. Mills did not have the authority to accept a resignation. As stated above, in support of his motion, the plaintiff submitted a number of exhibits, including a portion of the deposition testimony of Dr. Mills, the email correspondence between him and Dr. Mills, and a copy of the LSU faculty handbook which detailed the procedure for tendering and accepting a resignation.
In support of its motion for summary judgment, the defendant submitted into evidence the testimony of Dr. Mills, who stated that the plaintiff declared, "Well then, I'll resign and I'll go to Minnesota or Washington where they appreciate me and I can do research." According to the defendant, the plaintiff's statement was sufficient to show his intent to resign because he did not deny making the statement.
We have reviewed this record in its entirety. Based on our review, the summary judgment evidence demonstrates that a material fact remains in dispute as to whether the plaintiff resigned. According to the evidence, after the plaintiff stated, "I'll just resign[,]" and Dr. Mills allegedly accepted the statement as a verbal resignation, Dr. Mills and the plaintiff exchanged email messages. In one email, Dr. Mills requested a letter of resignation and stated, "If you wish to remain a faculty member then I expect you to fully perform your faculty duties[.]" Thereafter, in another message, Dr. Mills stated, "I was following up on your statement ... you wished to resign. If you have changed your mind, that's fine." In yet another email to the plaintiff, Dr. Mills stated, "You are free to leave, send me your resignation." Later that day, Dr. Mills sent an email to the chancellor informing him that the plaintiff had "threatened to resign." He also stated, "Although as you can see below I clearly said that he could remain but he does need to fulfill his faculty obligations. * * * Not sure what he wants to do at this time[.]" Additionally, Dr. Marion, the department chairman, sent an email to the chancellor in which Dr. Marion stated that Dr. Mills had informed him that the plaintiff "wished to resign." Dr. Marion also stated in the email that the plaintiff could "play by the rules or he can resign if he wishes."
Afterwards, on August 23, 2015, the plaintiff emailed Dr. Mills and inquired whether October 1, 2015, was "our preferred day for me to leave." Dr. Mills replied, "I prefer you to stay [sic] but if you wish to leave then we will work out your departure date. I still want you to schedule a meeting to see me."
Contrary to the defendant's argument, the correspondence indicates that neither the plaintiff, Dr. Mills, nor Dr. Marion considered the plaintiff's statement, "I'll just resign[,]" to be an official resignation of employment. Moreover, summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Briarwood Grp., L.L.C. v. Calhoun , 51,732 (La. App. 2 Cir. 1/18/18), 243 So.3d 1259 ; Jones v. Estate of Santiago , 2003-1424 (La. 4/14/04), 870 So.2d 1002 ;
*727 Benson v. State , 48,300 (La. App. 2 Cir. 10/9/13), 124 So.3d 544. One reason is that such factual determinations call for credibility evaluations and the weighing of testimony. Briarwood Grp. , supra ; Benson , supra . Summary judgment is inappropriate when there is a factual dispute as to intent. Briarwood Grp. , supra ; Harris v. Dunn , 45,619 (La. App. 2 Cir. 9/22/10), 48 So.3d 367.
Based upon this record, we conclude that a genuine issue of material fact exists as to whether the plaintiff's statement demonstrated his intent to resign from his tenured position at the university. In determining the intent of a party, the district court will be required to weigh evidence and assess the credibility of witnesses. Thus, the determination of intent is not appropriate for summary judgment and the district court erred in granting the defendant's motion for summary judgment. Consequently, we shall reverse, in part, the judgment and remand this matter for further proceedings.
CONCLUSION
For the foregoing reasons, summary judgment in favor of the defendant is reversed. The denial of the plaintiff's motion for partial summary judgment is affirmed. This matter is remanded to the district court for further proceedings. Costs, in the amount of $3,169.37, are assessed to the appellee, Board of Supervisors of Louisiana State University System.
REVERSED IN PART; AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

The plaintiff's tenure was ratified by the Board on April 20, 2006, and it became effective July 1, 2006. He was promoted to Professor of Medicine, effective July 1, 2013.

Dr. Marion specified some job duties that the plaintiff had refused to perform, namely refusing to give lectures, claiming he was "too busy in clinic," and refusing to "take his rotations in the [Hematology-Oncology] Prison Clinic."

Accreditation for Graduate Medical Education.